# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MCBRIDE,<br><br>Petitioner,<br><br>vs.<br><br>JAMES A. YATES, Warden, et al.,<br><br>Respondents. | Civil No.    11cv1351-AJB (PCL)<br><br>**REPORT AND RECOMMENDATION RE: PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Petitioner Robert McBride, a prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in San Diego County Superior Court case number SCD212872 for robbery as an aider and abettor, Penal Code section 211 . (Lodgment 1, at 62.)  The trial court also found true two prior strike convictions pursuant to Penal Code section 667(b)(i) and two prior serious convictions pursuant to Penal Code section 667(a)(1). (Id. at 64.) After dismissing one of the prior strike convictions, the trial court sentenced Petitioner to 16 years in prison. (Id. at 136.) Petitioner challenges his conviction on the basis of two claims, ineffective assistance of counsel and trial error of excluding proffered defense evidence. (Doc. 1.)

This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(d)(4) for Proposed Findings of Fact and Recommendation for Disposition.  For the reasons set forth below, the Court respectfully recommends that the Petition be **DENIED**.

//

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Summer v. Mata, 449 U.S. 539, 550 (1981) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken verbatim from the California Court of Appeal's opinion:

> As Damane Stanley stood waiting at a bus stop on his way home from work, McBride and a juvenile, Patrick Hurst, stood talking by a fire hydrant near a large tree west of the bus stop. Hurst walked across the street and exchanged money with another man while McBride walked into a nearby apartment complex parking lot, retrieved his girlfriend's white station wagon, and parked it by the tree.
>
> Hurst then walked back across the street, approached Stanley and said to him, "What is brackin'? [¶] ... [¶] You about to get jacked up for your stuff. [¶] ... [¶] This is Ocean View Brims. [¶] ... [¶] You look like you from Skyline." Stanley responded that he was from New York, not from Skyline, and he did not know what Hurst was talking about. McBride then grabbed Stanley from behind in a bear hug while Hurst took the cell phone clipped to Stanley's side and $20 from Stanley's pocket.
>
> McBride released Stanley and walked quickly to the station wagon. McBride got into the driver's seat and Hurst got into the passenger seat. Stanley approached the passenger side of the vehicle and asked McBride and Hurst to return his cell phone. They drove away without responding.
>
> Stanley walked to a nearby pay phone and called the police department. He gave the dispatcher some of the characters from the station wagon's license plate. He gave the responding police officers a description of McBride, indicating McBride was wearing blue jeans and a white T-shirt and was missing his top front teeth.[2] Approximately 20 minutes later, police officers drove Stanley to a nearby parking lot where he identified McBride as the person who had bear-hugged him. Several days later, Stanley was driving in the area, saw Hurst, and reported the sighting to police officers. He subsequently identified Hurst in a photo array.FN2.
>
> Police officers found McBride in an apartment complex adjacent to the bus stop. He was wearing dark jeans and a white T-shirt and was missing his top front teeth. When questioned by a police officer and without being informed about the specifics of the robbery, McBride stated no one could have witnessed him bearhugging Stanley while another person rifled through Stanley's pants. When confronted about his knowledge of the incident, McBride told the officer he thought that was how people were robbed. The police searched McBride's home and did not find Stanley's cell phone.
>
> A police department gang detective testified Hurst is a documented member of the 5-9 Brim gang and Hurst's remarks to Stanley were typical gang language intended to instill fear. The detective further testified he did not have sufficient information to determine whether McBride was a gang member.

---

[2] At the preliminary hearing, Stanley testified McBride was wearing a black T-shirt with writing on it. At trial, Stanley testified McBride was wearing a dark or black shirt and dark pants or jeans.

*Defense Evidence*

McBride testified he knew Hurst only as "Little Jinno" and had interacted with him four or five times the week before the robbery. He had been talking with Hurst for 10-15 minutes before Stanley arrived at the bus stop. Just after Stanley got off the bus, Hurst crossed the street and exchanged money with another man, then returned and resumed talking with McBride. McBride and Hurst made plans to buy cigarettes and McBride went to get his girlfriend's car so they could do so. As McBride was leaving, Hurst headed toward Stanley. When McBride returned with the car, he pulled up to the bus stop and told Hurst to get in. Stanley, who did not appear to be upset or scared, approached the car, leaned down and looked into the passenger side window, and said, "sir, I'm begging you." McBride thought Stanley was going to ask him for a ride, so he cut Stanley off, told Stanley he could not give him a ride, and drove off. He dropped Hurst off at a corner gas station, ran an errand, and returned home. Once home, he changed from a black T-shirt with green skulls on it to a white T-shirt.

McBride's girlfriend also testified McBride had worn a black T-shirt with green skulls on it that day. In addition, she testified that McBride had an injured right hand and could not use it much.

Hurst testified he saw Stanley standing at the bus stop. He denied using gang language or robbing Stanley. He said he asked Stanley for his cell phone and a couple of dollars and Stanley gave them to him. Stanley asked for the cell phone back, but he did not give the cell phone back to him. Hurst acknowledged talking with McBride before approaching Stanley; however, he said McBride was not with him during his encounter with Stanley. He said he would not have had anyone with him during such an encounter because he does not trust anybody. He initially testified he did not know where McBride was during the encounter, but later testified McBride went to get a car because he had previously asked McBride for a ride. After the encounter, he said he flagged McBride down and McBride gave him a ride. Hurst admitted being under the influence of cocaine at the time and that his memory was poor in some respects. He also admitted lying to a police detective by denying any involvement in the incident.

(Lodgment 6, at 2-5.)

### III.   PROCEDURAL BACKGROUND

On September 24, 2008, the San Diego County District Attorney filed an information charging Petitioner with one count of robbery, in violation of California Penal Code section 211 (Lodgment 1, at 9.)  The information alleges that Petitioner was convicted of two serious felonies, Penal Code sections 667(a)(1), 668, and 1192.7(c), and suffered two prior serious strike convictions, Penal Code sections 667 subdivisions (b) through (i), 1170.12, and 668. (Id. at 9-10.) On August 6, 2008, a jury found McBride guilty of robbery.  (Id. at 62.) After dismissing one of the prior strike convictions, the trial court sentenced Petitioner McBride to 16 years in prison. (Id. at 136.) On October 31, 2008, McBride filed a notice of appeal. (Lodgment 4, at 1.) In his appeal, McBride claimed the trial court erred by its refusal to admit evidence of other robberies committed

by Hurst. (Lodgment 3.) On July 30, 2009, the state court of appeal affirmed the trial court's judgment and denied McBride's appeal. (Lodgment 6.) On August 17, 2009, McBride appealed the court of appeal's decision to the California Supreme Court, which was subsequently denied on October 19, 2009. (Lodgment 7; Lodgment 8.) On January 11, 2010, McBride filed a habeas corpus petition in the trial court, alleging that his counsel was ineffective for failing to impeach prosecution's witness with prior inconsistent statements. (Lodgment 9, at 3.) On March 11, 2010, the superior court denied McBride's petition for writ of habeas corpus opining that "[t]here is no indication from the contexts of the exhibits that counsel was deficient in the manner argued by Petitioner and that counsel's deficiency prejudiced Petitioner with respect to the underlying conviction." (Lodgment 10, at 2-3.) On May 18, 2010, McBride filed a habeas corpus petition in the state court of appeal alleging ineffective assistance of counsel. (Lodgment 11.) The state court of appeal issued an order denying McBride's petition concluding that "McBride has not established that counsel's performance was unreasonable and that as a result the outcome of trial would have been different." (Lodgment 12.) On August 16, 2010, McBride filed a habeas corpus petition in the California Supreme Court alleging trial court's error by its refusal to admit proffered defense evidence, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. (Lodgment 13.) McBride's petition was denied by the California Supreme Court without comment on March 2, 2011. (Lodgment 14.)

Petitioner McBride filed the instant Petition for Writ of Habeas Corpus on June 16, 2011, claiming ineffective assistance of trial counsel and trial court's error by its refusal to admit proffered defense evidence. (Doc. 1.) Respondents filed their response to Petitioner's habeas corpus petition on November 29, 2011. (Doc. 8.) Petitioner filed a traverse on January 26, 2012. (Doc. 12.)

**IV.    DISCUSSION**

    A.    *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs any petition filed in federal court after April 24, 1996. See Lindh v. Murphy, 521 U.S. 320 (1997). As such, this Petition is governed by the provisions of AEDPA. Id. Under AEDPA, a habeas petition will not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim– (1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d) (West 2006). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 72 (2003).

A federal habeas court may grant relief under the "contrary to" clause if the state court arrives at a conclusion conflicting with established precedents of the Supreme Court on a question of law or if it reaches a different conclusion after encountering facts that are materially indistinguishable from a relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of a particular case or unreasonably extends it to a new context where it should apply. Taylor, 529 U.S. at 407. Rather, a federal habeas court should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 365.

Where there is no reasoned decision from the state's highest court, the reviewing court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). If the state court does not supply reasoning for its decision, federal habeas review is not de novo but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Andrade, 538 U.S. at 75-76). However, a state court need not cite to federal law precedents when resolving a habeas corpus claim as long as its results or reasoning did not conflict with clearly established federal law. Early v. Packer, 537 U.S. 3 (2002).

  B. *Analysis*

Petitioner McBride raises two claims in his Petition: ineffective assistance of counsel and the trial court's error to admit proffered defense evidence. (Doc. 1, at 6-7.) Petitioner further

distinguishes two subclaims[1] within the claim of ineffective assistance of counsel: (1) trial counsel's failure to impeach victim Stanley with prior inconsistent statements and (2) trial counsel's failure to investigate viable defense strategies. (Id. at 15.) Respondents contend that Petitioner's counsel was neither ineffective nor was Petitioner prejudiced. (Doc. 8-1, at 14.) Furthermore, Respondents ask this Court to deny Petitioner's request for an evidentiary hearing. (Doc. 8, at 2.)

1.  *Ineffective Assistance of Counsel*

McBride raises two subclaims for ineffective assistance of counsel: defense counsel's failure to impeach prosecution's witness Stanley with prior inconsistent statements and failure to fully investigate a viable defense strategy through a re-enactment of the bear hug. (Doc. 1, at 15.) Petitioner argues counsel was ineffective because he failed to "introduce the original police report and Mr. Stanley's testimony from the preliminary hearing [to impeach Stanley at trial] and [that counsel] failed to confront Mr. Stanley with the obvious changes in his testimonies during cross-examination." (Id. at 22) Petitioner asserts that "[d]efense counsel never asked any questions of substance, choosing instead to imply that Mr. Stanley was being untruthful [on] mundane matters while avoiding matters of importance that could be backed up by [victim's] prior inconsistent testimonies." (Id. at 23.) Petitioner alleges that "[i]n its most quintessential form, the instant case is about a bear hug." (Id. at 24.) Petitioner argues that defense counsel's refusal to reenact the bear hug at the jury trial rendered his representation ineffective. (Id.)

Under § 2254(d), a petitioner must establish that the state court's application of governing federal law was unreasonable. The governing federal law in ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). The United States Supreme Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 688. Strickland does not ask whether a court can be certain counsel's

---

[1] Petitioner McBride listed four subclaims in his Traverse (Doc. 12, at 2), however, this Court discerns only two subclaims since subclaims 1-3 are essentially the same.

performance had no effect on the outcome or whether a reasonable doubt could have possibly been established, but rather whether it is "reasonably likely" the result would have been different. Harrington v. Richter, 131 S.Ct. 770, 786 (2011). (citing Wong v. Belmontes, 558 U.S. ——, ——, 130 S.Ct. 383, 390,(2009) (per curiam) (slip op., at 13).) The Court need not address both the deficiency prong and the prejudice prong if Petitioner fails to make a sufficient showing of either one. Strickland, supra at 697. In order for this court to grant a writ of habeas corpus, Petitioner must establish that there is no possibility any fair-minded jurist could disagree with state court's application of Strickland in concluding that Petitioner was not prejudiced.

Since the California Supreme Court denied Petitioner McBride's habeas corpus petition without comment, this Court looks through to the decision articulated by the California Court of Appeal. Ylst, 501 U.S. at 801-06. Applying the Strickland standard, the California Court of Appeal concluded that:

> McBride did not challenge the competency of trial counsel on appeal, and he has not presented any evidence outside the record on appeal to support his argument that counsel was ineffective. The record shows McBride and the perpetrator, Patrick Hurst, both testified at trial that McBride only gave Hurst a ride and did not participate in the robbery. The jury disbelieved them. McBride has not established that counsel's performance was unreasonable and that as a result the outcome of trial would have been different. The petition is denied.

(Lodgment 12.)

A review of the trial court records indicates that the court of appeal did not unreasonably apply the standards. With respect to the first prong of the Strickland standard, trial counsel's representation was not deficient. Petitioner bears the burden to overcome the presumption that the challenged action "might be considered sound trial strategy." Strickland, supra at 689. A tactical decision by counsel with which the Petitioner disagrees cannot form the basis of a claim of ineffective assistance of counsel. Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1984). On October 3, 2008 after trial, Petitioner raised concerns he had with the Deputy Public Defender's representation in a Marsden hearing. (Doc. 1-4, at 6.)  At the hearing, Petitioner complained counsel was ineffective based on counsel's failure (1) to impeach the witness more vigorously; and (2) to re-enact the bear hug.[2] (Id. at 9.) The trial court respected trial counsel's tactical decisions when

---

[2] At the Marsden hearing, Petitioner also raised other issues unrelated to the instant appeal.

1 "cross-examining a victim who arguably is a pretty respectable guy, that it's anticipated the jury is
2 probably going to like or perhaps have some respect for." (Id. at 19.) The trial court agreed with trial
3 counsel that "a more vigorous attack [on the victim] may have been to [Petitioner's] detriment."
4 (Id.) Trial court did not believe a more vigorous impeachment "would have made any difference in
5 the ultimate outcome in this case." (Id. at 19-20.) The trial court denied Petitioner's Marsden
6 motion after a finding that there is no "colorable claim of incompetence in this matter." (Id. at 20.)
7 Similarly, this Court agrees with the trial judge's finding that counsel's representation was not
8 deficient. The trial counsel's decision not to pursue every course of action suggested by a client was
9 tactical in nature and fell within his authority. Guam, supra at 1169. As such, counsel's performance
10 did not fall short of effective assistance of counsel.

11     With respect to the prejudice prong of the Strickland standard, neither can the Petitioner
12 show that counsel's performance was so deficient as to deprive him of a fair trial. Strickland, supra
13 at 687. After reviewing the record, this Court finds that McBride did, in fact, present his defense as
14 the unwitting driver to the jury. McBride testified that he decided to take his car and give Hurst a
15 ride to the store because he was going to pick up a prescription for his son anyway. (Lodgment 2, at
16 279.) Hurst corroborated McBride's testimony by testifying that "McBride wasn't even there" when
17 the robbery occurred. (Id. at 412.) Hurst also testified that McBride gave him a ride. (Id.) The jury
18 was presented with Hurst and McBride's testimonies and they disbelieved them. Matylinsky v.
19 Budge, 577 F.3d 1083, 1093 (9th Cir. 2009) (finding no prejudice where defense counsel cross-
20 examined prosecution's witness sufficiently to make credibility an issue before the jury even though
21 additional investigation would have unearthed more impeaching evidence); United States v. Holler,
22 411 F.3d 1061, 1065 (9th Cir. 2005); United States v. Beardslee, 197 F.3d 378, 383 (9th Cir. 1999)
23 (district court's decision to exclude evidence is constitutional when the fact-finder hears sufficient
24 information to assess the credibility of the witness).

25     Petitioner fails to demonstrate that counsel's performance was deficient or that a more
26 favorable result was likely absent trial counsel's alleged errors. Trial counsel's decision to pursue
27 some courses of action and not others was a tactical decision. Guam, supra at 1169. Because trial
28 counsel's tactical decisions would not amount to ineffective assistance of counsel, Petitioner could

not meet the first prong of the <u>Strickland</u> standard. Furthermore, Petitioner does not show that his defense was prejudiced by counsel's alleged deficient performance. Petitioner was able to proffer his defense before the jury. There is no ineffective assistance of counsel as long as the fact-finder hears sufficient information to make the necessary determination. <u>Holler</u>, 411 F.3d at 1065; <u>Beardslee</u>, 197 F.3d at 383. Since Petitioner fails to meet either prong of the <u>Strickland</u> standard, the California Court of Appeal's opinion denying Petitioner's ineffective assistance of counsel claim was a reasonable application of federal authority.

Therefore, McBride's claim of ineffective assistance of counsel is hereby **DENIED**.

### 2. *Trial court's refusal to admit proffered defense evidence*

Petitioner alleges that the trial court's refusal to admit witness testimonies of Hurst's subsequent robbery victims violated his Fourteenth Amendment right and Sixth Amendment right to confront witnesses. (Doc. 1, at 32.) Petitioner argues the trial court erred when it excluded Hurst's pattern of operating alone depriving Petitioner the opportunity to present a complete defense. (<u>Id.</u> at 39-40.) Citing to <u>Holmes v. South Carolina</u>, 547 U.S. 319 (2006), Petitioner contends that "[a] state may not arbitrarily limit a defendant's ability to secure the testimony of favorable witnesses or arbitrarily limit the evidence a defendant can present." (Doc. 1, at 32.) Respondents disagree stating that the state court followed closely the <u>Holmes</u> rule and a reasonable jurist could conclude that the fact that Hurst committed solo robberies was not relevant to whether McBride assisted him on the evening in question. (Doc. 8-1, at 17.)

The court of appeal denied McBride's claim:

> Subsequent to the robbery in this case, Hurst committed several other similar robberies by himself. Defense counsel sought to introduce evidence of these robberies to corroborate McBride's defense, which was that he did not participate in robbing Stanley and was instead an unwitting getaway driver. The prosecution objected to the evidence, arguing the evidence was of minimal probative value and its introduction would be time-consuming and would confuse the issues. Defense counsel countered the evidence went to the heart of the defense because all of the robberies were committed in the same manner. The trial court excluded the evidence under Evidence Code section 352. McBride contends the trial court's decision violated his federal constitutional right to due process of law. We conclude there is no merit to this contention.
>
> Third party culpability evidence is admissible if the evidence is capable of raising a reasonable doubt as to defendant's guilt. (*People v. Page* (2008) 44 Cal.4th

1, 38; *People v. Hall* (1986) 41 Cal.3d 826, 833.) The standard for admitting third party culpability evidence is the same as for other exculpatory evidence. The evidence must be relevant and its probative value must not be substantially outweighed by the risk of undue delay, prejudice, or confusion. (*People v. Hamilton* (2009) 45 Cal.4th 863, 914; *Hall, supra*, 41 Cal.3d at p. 834.) We review trial court rulings on the admissibility of third party culpability evidence for abuse of discretion. (*People v. Prince* (2007) 40 Cal.4th 1179, 1242.) No abuse of discretion occurred in this case.

Hurst committed the other robberies after McBride was incarcerated and had no opportunity to assist him. Consequently, the fact that Hurst committed the other robberies by himself was not probative of and would not have raised a reasonable doubt about McBride's culpability for the robbery of Stanley. (*See, e.g., People v. Harris* (2005) 37 Cal.4th 310, 340[no abuse of discretion to exclude evidence that would not have raised a reasonable doubt because it would not have demonstrated a third party committed the crime or disproved the prosecution's theory defendant committed the crime].)

Furthermore, excluding evidence of the other robberies did not deprive McBride of the opportunity to present a third party culpability defense. The trial court merely rejected certain evidence concerning the defense. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1325; *People v. Adams* (2004) 115 Cal.App.4th 243, 255.) McBride was still able to present his defense through his own testimony denying any knowledge of or participation in Hurst's encounter with Stanley and through Hurst's testimony claiming he acted alone and always acts alone in such encounters because he does not trust anyone. McBride was also able to present corroborating evidence that he did not know Hurst well, that the police did not find the cell phone when they searched his home shortly after the robbery, and that he had a hand injury, which inferably would have prevented him from bear-hugging Stanley.

As the trial court did not abuse its discretion in excluding evidence of Hurst's other robberies and as McBride had an opportunity to present his third party culpability defense, we conclude the exclusion of evidence of Hurst's other robberies did not deprive McBride of due process of law. (*People v. Prince*, *supra*, 40 Cal.4th at p. 1243 [absent an abuse of discretion, exclusion of third party culpability evidence does not impermissibly infringe on a defendant's federal constitutional rights].)

(Lodgment 6.)

Notwithstanding an erroneous ruling, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. Drayden v. White, 232 F. 3d 704, 710 (9th Cir. 2000.) A criminal defendant's right to present a defense is not violated unless a state court's decision to exclude evidence is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." United States v. Scheffer, 523 U.S. 303, 308 (1998). Petitioners seeking habeas relief bear the heavy burden of showing a due process violation based on an evidentiary decision. Boyde v. Brown, 404 F. 3d 1159, 1172 (9th Cir. 2005).

Under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his defense. Taylor v. Illinois, 484 U.S. 400, 409 (1988). Under either the Due Process Clause of the Fourteenth Amendment or the Compulsory Process of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." Cranes v. Kentucky, 476 U.S. 683, 690 (1986). Even so, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor, supra at 410. Under its discretion, the court may nonetheless exclude relevant evidence if its probative value is substantially outweighed by the risk of undue delay, prejudice, or confusion. Cal. Evid. Code § 352. The trial court's decision to admit or exclude exculpatory evidence is reviewed for abuse of discretion. People v. Lewis (2001) 26 Cal. 4th 334, 372-73.

To be relevant and admissible under California law, evidence of third party culpability must be capable of raising a reasonable doubt of the defendant's guilt." People v. Davis (1995) 10 Cal. 4th 463, 501; People v. Hall (1986) 41 Cal. 3d 826, 833. Evidence of mere motive or opportunity, without more, will not suffice to raise a reasonable doubt. People v. Yeoman (2003) 31 Cal. 4th 93, 140.

Trial court's decision to exclude the third party culpability evidence was not an abuse of discretion. Pursuant to California Evidence Code section 352, the trial court refused defense counsel's request to present witness testimonies from Hurst's subsequent robbery victims after McBride was incarcerated. (Lodgment 2, at 406.) The court did not find "much relevance with respect to what other robberies [Hurst] may have committed and how he committed them, not in relation to this defendant." (Id.) Contrary to Petitioner's contentions, trial court's decision to exclude third party culpability evidence is consistent with the rule articulated in Holmes: third party culpability evidence "may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." Holmes, supra at 327. Best articulated by the appellate court, "the fact that Hurst committed the other robberies by himself was

not probative of and would not have raised a reasonable doubt about McBride's culpability for the robbery of Stanley." (Lodgment 6, at 6.) The trial court's decision to exclude Petitioner's proposed evidence of third-party culpability is constitutional on its face.

The court of appeal agreed with trial court's decision to exclude later robberies committed by Hurst and noted that the exclusion did not preclude McBride from presenting his defense. (Lodgment 6.) McBride testified that he had never hung out with Hurst or given him a ride before. (Lodgment 2, at 277.) He testified that Hurst asked him for some cigarettes. (Id. at 274.) He offered to drive Hurst to the store so he could give him some cigarettes and pick up his son's prescription at the same time. (Id. at 278-79.) He testified that Hurst approached the victim alone. (Id. at 279.) He denied any knowledge of the robbery. (Id. at 294.) Hurst testified that he committed the robbery alone on April 9, 2008. (Id. at 412.) Therefore, McBride had the opportunity to present his defense that he was not involved in the robbery and Hurst committed the robbery alone.

Petitioner has failed to demonstrate that the decision of the appellate court was contrary to or an unreasonable application of clearly established Supreme Court precedent, or that it was based on un unreasonable determination of the facts of this case. As such, this court rejects McBride's contention that he was not afforded an opportunity to present his defense and finds that the trial court reasonably excluded evidence of witness' testimonies.

For all of the foregoing reasons, Petitioner's claim of trial error to admit third party culpability evidence is **DENIED.**

3.  *Request for an Evidentiary Hearing*

Review of habeas claims that have been adjudicated on the merits in State court proceedings is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1401 (2011). Adjudicated on the merits means a decision finally resolving the parties' claims that is based on the substance of the claim advanced, rather than on a procedural, or other, ground. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). Review under § 2254(d)(1) focuses on what a state court knew and did

measured against Supreme Court precedent as of the time the state court rendered its decision. Id. Therefore, a federal court must analyze whether a state court's adjudication resulted in an unreasonable application of federal law to the facts that were before it, and a federal court may only hold an evidentiary hearing with respect to claims that were not adjudicated on the merits in state court. Id. Thus, while AEDPA enumerates certain statutory exceptions to the ban on evidentiary hearings in federal court, none of them applies here as McBride's claims were all "adjudicated on the merits" either on direct appeal or on state collateral review.

McBride's claim of ineffective assistance of trial counsel was decided on the merits during state habeas proceedings - both the California Superior Court and the California Court of Appeal held hearings on these claims and denied relief - therefore, McBride is not entitled to an evidentiary hearing with respect to this claim. (Lodgment 10; Lodgment 12.)

McBride's claim of trial error was decided on the merits by the state court on direct appeal. (Lodgment 6.) Since the California Supreme Court denied this claim without comment (Lodgment 8), the state appellate court opinion constitutes a decision on the merits and this Court may not hold an evidentiary hearing regarding this claim. Cullen, 131 S. Ct. at 1401.

Accordingly, McBride's request for an evidentiary hearing is **DENIED.**

## IV. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Anthony J. Battaglia under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, IT IS HEREBY RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the request for an evidentiary hearing and **DENYING** Petition for Writ of Habeas Corpus.

IT IS ORDERED that no later than **June 11, 2012**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **June 25, 2012.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: May 15, 2012

Peter C. Lewis
U.S. Magistrate Judge
United States District Court